# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RONALD DUHE, individually;**
**MARK HOLICK, individually; and**
**SPIRIT ONE CHRISTIAN CENTER, INC.,**
**a Kansas Non-Profit Corporation**                          **PLAINTIFFS**

**v.**                          **Case No. 4:14-cv-580-KGB**

**THE CITY OF LITTLE ROCK, ARKANSAS,**
**an Arkansas municipal corporation; SIDNEY**
**ALLEN, in an individual capacity; and PULASKI COUNTY,**
**an Arkansas political subdivision**                          **DEFENDANTS**

## OPINION AND ORDER

Plaintiffs Ronald Duhe, individually; Mark Holick, individually; and Spirit One Christian Ministries, Inc. ("Spirit One") filed this action pursuant to 42 U.S.C. § 1983 alleging violations of their First, Fourth, and Fourteenth Amendment rights by defendants after plaintiffs were arrested while participating in a protest at No. 4 Office Park Drive in Little Rock, Arkansas, outside the Little Rock Family Planning Services ("LRFPS"). Previously, this Court issued an Order (Dkt. No. 189) resolving three pending motions for summary judgment (Dkt. Nos. 100, 134, 138). In that Order the Court indicated that its reasoning would be set out in a separate Order (Dkt. No. 189). Subsequently, plaintiffs filed a motion to amend order and make additional findings (Dkt. No. 190). Plaintiffs request that this Court set forth the reasoning for its opinion issued in the previous Order. The Court will state its rationale for the disposition of the motions for summary judgment in the instant Order (*See* Dkt. Nos. 100, 134, 138).[1] Thus, the Court denies as moot plaintiffs' motion to amend order and make additional findings (Dkt. No. 190).

---

[1] The Court determines that, notwithstanding plaintiffs' filing a notice of appeal (Dkt. No. 191), the Court retains jurisdiction to issue the instant supplemental Order. *See State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999). As stated in its previous Order, the

First is the second motion for partial summary judgment filed by plaintiffs (Dkt. No. 100). This Court denied as moot plaintiffs' first motion for partial summary judgment after plaintiffs filed their amended complaint (Dkt. Nos. 56, 58). Defendants Lieutenant Sidney Allen and the City of Little Rock, Arkansas (the "City"), filed a response to the second motion (Dkt. No. 124). Defendant Pulaski County, Arkansas (the "County"), also filed a response (Dkt. No. 121). Plaintiffs have filed replies to each of these responses (Dkt. Nos. 142, 143, 144). This Court denied plaintiffs' second motion for partial summary judgment by separate Order (Dkt. No. 189), and this Order sets forth the Court's reasoning.

Second is Lt. Allen and the City's motion for summary judgment (Dkt. No. 134). Plaintiffs filed a response to that motion (Dkt. No. 146). Lt. Allen and the City filed a reply that included additional deposition transcripts and, according to the plaintiffs, raised certain issues for the first time (Dkt. No. 153). Thus, this Court granted plaintiffs' motion to file a sur-reply, and plaintiffs have now filed their sur-reply (Dkt. Nos. 156, 158, 160). Lt. Allen and the City have filed a response to the plaintiffs' sur-reply (Dkt. No. 161). This Court granted Lt. Allen and the City's motion for summary judgment by separate Order (Dkt. No. 189), and this Order sets forth the Court's reasoning.

Third is the County's motion for summary judgment (Dkt. No. 138). Plaintiffs filed a response to the County's motion (Dkt. No. 149). The County filed a reply to the plaintiffs' response (Dkt. No. 152). This Court granted the County's motion for summary judgment by separate order (Dkt. No. 189), and this Order sets forth the Court's reasoning.

---

Court has not yet entered final judgment in this action (Dkt. No. 189, at 2). Thus, the Court determines plaintiff's appeal is premature (Dkt. No. 191). Therefore, the Court enters this supplemental Order and will enter final judgment.

Essentially, these motions are cross motions for summary judgment. Plaintiffs moved for summary judgment on all claims, reserving only the issue of damages for trial (Dkt. No. 100), and defendants moved for summary judgment on all claims, as well (Dkt. Nos. 134, 138). For the following reasons, the Court denies plaintiffs' motion for summary judgment (Dkt. No. 100), grants Lt. Allen and the City's motion for summary judgment (Dkt. No. 134), and grants the County's motion for summary judgment (Dkt. No. 138).

## I. Procedural And Factual Background

### A. Procedural Background

Plaintiffs filed their first complaint in this matter on September 26, 2014, alleging violations of their First, Fourth, and Fourteenth Amendment rights by defendants after plaintiffs were arrested while participating in a protest at No. 4 Office Park Drive in Little Rock, Arkansas, outside the LRFPS (Dkt. No. 1). As defendants, plaintiffs named the City and Lt. Allen, an officer with the Little Rock Police Department ("LRPD"), in his individual capacity (Dkt. No. 1).

On August 4, 2015, plaintiffs filed their amended complaint, which is the operative pleading in this case (Dkt. No. 58). In their amended complaint, plaintiffs allege 13 causes of action, each of which is discussed in more detail below. Essentially, plaintiffs allege that their First, Fourth, and Fourteenth Amendment rights were violated by their arrest and subsequent detention. In addition to the City and Lt. Allen, plaintiffs named the County as a defendant.

For their claims against Lt. Allen, plaintiffs allege that Lt. Allen violated their First Amendment rights by arresting them during the protest while plaintiffs were engaged in speech on a matter of public concern in a public location (Dkt. No. 58, ¶¶ 73–76, 90–93). Plaintiffs allege that Lt. Allen violated their Fourth and Fourteenth Amendment rights by arresting them without

probable cause and subjecting them to an unreasonable search and seizure (Dkt. No. 58, ¶¶ 78–81, 94–98).

As against the City, plaintiffs allege that the City violated their First Amendment rights through an official decision, policy, or practice that permitted Lt. Allen to arrest them while they were engaged in speech on a matter of public concern in a public place (Dkt. No. 58, ¶¶ 82–85, 99–102). Plaintiffs further allege that the City violated their Fourth and Fourteenth Amendment rights through an official decision, policy, or practice, which led to their arrest without probable cause (Dkt. No. 58, ¶¶ 86–89, 103–A106). Plaintiffs also request declaratory relief against the City in the form of an Order declaring that both the City's Permit Ordinance and Arkansas Code Annotated § 5-71-207 are unconstitutional (Dkt. No. 58, ¶¶ 107–110, A112-7–10).

As against the County, plaintiffs allege claims for unlawful detention and unlawful photo publication (Dkt. No. 58, ¶ A112-1–4). Plaintiffs also contend that the City is liable for the County's unconstitutional acts (Dkt. No. 58, ¶ A112-6).

Finally, with respect to all defendants, plaintiffs allege a cause of action for attorney's fees pursuant to 42 U.S.C. § 1988 (Dkt. No. 58, ¶ 111–A112).

In their answer, defendants Lt. Allen and the City deny any wrongdoing in connection with plaintiffs' arrests and contend that both Arkansas Code Annotated § 5-71-207 and the City's Permit Ordinance are constitutional (Dkt. No. 64). Lt. Allen asserts the defense of qualified immunity for his individual actions (Dkt. Nos. 64, at 122; 135, at 8-30). In its answer, the County denies any wrongdoing or liability based on its detention and publication of the plaintiffs' photos (Dkt. No. 66).

### B. Factual Background

#### 1. Objections To Record Evidence

Plaintiffs initially filed their motion for partial summary judgment before filing their amended complaint (Dkt. Nos. 16; 58). The City and Lt. Allen responded to that motion and submitted 20 exhibits in support of their response (Dkt. No. 28). Plaintiffs filed a combined reply to defendants' response to plaintiffs' statement of undisputed facts and to defendants' affidavits and exhibits (Dkt. No. 32). In that document, plaintiffs lodged several evidentiary objections to defendants' record evidence. When granting plaintiffs leave to file their amended complaint, the Court denied as moot plaintiffs' initial motion for partial summary judgment and, as a result, did not rule on plaintiffs' objections (Dkt. No. 56).

In responding to plaintiffs' current motion for partial summary judgment, the City and Lt. Allen incorporated those 20 exhibits and submitted additional exhibits in support of their response (Dkt. No. 124). Plaintiffs renewed their objections to the 20 exhibits and lodged objections to the additional exhibits (Dkt. Nos. 142-1; 146-1).

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial – it is whether it *could* be presented at trial in an admissible form." *Id.* (emphasis in original). To the extent necessary for resolution of the pending motions, the Court rules as follows on all of plaintiffs' objections:

(a) Plaintiffs' objections to Bruce Moore's affidavit (Dkt. No. 28-1) based on alleged lack of materiality and Federal Rule of Evidence 701 are overruled.

(b)  Plaintiffs' objections to Assistant Police Chief Bewley's affidavit (Dkt. No. 28-2) based on alleged lack of materiality, Federal Rule of Evidence 602, Federal Rule of Evidence 701, and Federal Rule of Evidence 403 are overruled.

(c)  The Court will not strike Lt. Allen's affidavit (Dkt. No. 28-3); the Court does not deem it to be in direct conflict with his prior trial testimony cited by plaintiffs.  Plaintiffs point to testimonial statements made by Lt. Allen which they argue tend to establish that their arrest was motivated by violation of the permit ordinance (Dkt. No. 32, at 4-5).  Plaintiffs argue that Lt. Allen's testimony at their trial is inconsistent with an affidavit he filed in this litigation.  Plaintiffs appear to argue that the arrest was at least in part premised upon the permit ordinance.  The Court disagrees.  The Court determines that Lt. Allen's testimony at trial was at most equivocal on this point.

During direct examination, Lt. Allen testified that he arrested Mr. Duhe and Mr. Holick for "disorderly conduct, for impeding the flow of the traffic into the business and for causing a general annoyance and disturbance with the amplification device to the local business." (Dkt. No. 147-1, at 7).  Lt. Allen testified that he personally observed Mr. Duhe and Mr. Holick impeding traffic "several times," and that "we wanted to be sure that they were intentionally doing it." (*Id.* at 8).

During a cross-examination conducted by Mr. Holick, Lt. Allen conceded that he gave copies of potential citations of permit violations to Mr. Duhe and Mr. Holick (*Id.* at 10), but he never stated that either Mr. Duhe or Mr. Holick were arrested due to violation of the permit ordinance.  By contrast, Lt. Allen testified that Mr. Holick was "arrested for, primarily, impeding the flow of the patients coming to the business." (Dkt. No. 147-1, at 32).  When Mr. Holick asked, "So, I'm not arrested for using the microphone system I'm arrested for impeding traffic; is that correct?"  Lt. Allen replied, "Yes." (*Id.*).  Moreover, the District Judge presiding at trial asked the

parties at one point in the questioning, "What is the relevance here?  We're not charged with failure to get a permit." (*Id.* at 29).  Later, at a deposition in this matter, Lt. Allen stated that, upon arriving with Mr. Duhe and Mr. Holick at the jail, Lt. Allen reported to the staff that Mr. Duhe and Mr. Holick had been arrested for violation of the disorderly conduct statute (Dkt. No. 153-3, at 2).  Further, in response to requests for admission, both Mr. Duhe and Mr. Holick admit that they were not charged with failure to have a permit (Dkt. Nos. 28-15; 28-16).  The Court also overrules plaintiffs' remaining evidentiary objections to Lt. Allen's affidavit.

(d)  Plaintiffs' objections to Police Officer Jennifer Freeman's affidavit (Dkt. No. 28-4) based on Federal Rule of Evidence 602, alleged lack of materiality, and Federal Rule of Evidence 403 are overruled.

(e)  Plaintiffs' objections to Police Officer Ronald Morgan's affidavit (Dkt. No. 28-5) based on Federal Rule of Evidence 602, alleged lack of materiality, and Federal Rule of Evidence 403 are overruled.

(f)  Plaintiffs' objections to Lori Williams's affidavit (Dkt. No. 28-6) based on Federal Rule of Evidence 602, alleged lack of materiality, Federal Rule of Evidence 403, and what this Court construes as objections based on Federal Rules of Evidence 401 and 402 are overruled.

(g)  Plaintiffs' objections to Gail Teague's affidavit (Dkt. No. 28-7) based on Federal Rule of Evidence 602, alleged lack of materiality, and Federal Rule of Evidence 403 are overruled.

(h)  Plaintiffs' objections to Wayne Behr's affidavit (Dkt. No. 28-8) based on Federal Rule of Evidence 602, alleged lack of materiality, and Federal Rule of Evidence 403 are overruled.

(i)  Plaintiffs' objection to Travis B. Herbner's affidavit based on alleged lack of materiality is overruled.

(j)  Plaintiffs' objections to Michelle N. Ferguson's affidavit (Dkt. No. 28-10) based on Federal Rule of Evidence 602, alleged lack of materiality, and Federal Rule of Evidence 403 are overruled.

(k)  Plaintiffs' objection to David P. Rowan's affidavit (Dkt. No. 28-11) based on alleged lack of materiality is overruled.

(l)  Plaintiffs' objection to Meghan M. Buchert's affidavit (Dkt. No. 28-12) based on alleged lack of materiality is overruled.

(m)  Plaintiffs' objection to Matthew Briggs's deposition excerpts (Dkt. No. 28-13) based on alleged lack of materiality is overruled.

(n)  There is no objection lodged by plaintiffs initially to the Amended Ordinance dated March 3, 2015.  To the extent plaintiffs object based on alleged lack of materiality, the objection is overruled.

(o), (q)  Plaintiffs' objections to Mr. Holick's responses to requests for admission and answers to interrogatories are overruled.

(p), (r)  Plaintiffs' objections to Mr. Duhe's responses to requests for admission and answers to interrogatories are overruled.

(s)  Plaintiffs' objection to the disposition record (Dkt. Nos. 28-19; 124-19) is overruled.

(t)  Plaintiffs' objections to the depositions of Mr. Moore (Dkt. No. 124-20), Mr. Duhe (Dkt. No. 124-21), Mr. Holick (Dkt. No. 124-22), Ms. Williams (Dkt. No. 123-23), Ms. Teague (Dkt. No. 124-24), Ms. Ferguson (Dkt. No. 124-25), Mr. Hurd (Dkt. No. 1234-26), Lt. Allen (Dkt. No. 127-27), Bill Darr (Dkt. No. 124-28), Ruth Darr (Dkt. No. 124-29), Mark Kiser (Dkt. No. 124-30), Emily Sichley (Dkt. No. 124-31), Wayne Bewley (Dkt. No. 124-32), Ty Tyrell (Dkt. No. 124-33) are overruled.

To the extent plaintiffs raise additional objections to the summary judgment record before this Court that the Court has not specifically addressed, those objections have been considered by the Court and are overruled.

### 2. Underlying Facts

Many of the underlying facts are undisputed. According to the amended complaint, Spirit One is a successor in interest to Spirit One Christian Center, Inc., "a non-profit corporation organized and existing under the laws of the State of Kansas with a mission to promote the Gospel of the Lord Jesus Christ." (Dkt. No. 58, ¶ A7). The amended complaint alleges that Mr. Holick was employed by Spirit One and served as its president at all times relevant to this case (Dkt. No. 58, ¶ A6). In September 2012, plaintiffs Mr. Duhe and Mr. Holick participated in a pro-life, or anti-abortion, event that took place in Little Rock, Arkansas (Dkt. No. 58, ¶ 16–22; Dkt. No. 126, at 1).

The City admits that, on September 7, 2012, in anticipation of the pro-life event identified as Operation Save America, LRPD Assistant Chief Wayne Bewley issued Operational Order No. 2012-17 (Dkt. No. 126, at 1). Assistant Chief Bewley assigned Captain Ty Tyrell as commander of the overall operation and Lt. Allen, then a Lieutenant with the LRPD, to command the Special Response Unit (*Id.*).

The parties do not dispute that Mr. Duhe and Mr. Holick participated in a protest on September 14, 2012, at LRFPS (Dkt. No. 58, ¶ 22; Dkt. No. 126, at 2). The group of protestors did not apply for a permit (Dkt. No. 147, Ex. 3, Ferguson Depo., at 66:11-12; Dkt. No. 101, Ex. 7, Holick Aff., ¶ 4). Mr. Duhe and Mr. Holick both used a microphone and amplifier to speak during the protest (Dkt. No. 58, ¶ 25; Dkt. No. 126, at 2).

Lt. Allen came to the protest and did not use a decibel meter to measure the volume of the amplifier (Dkt. No. 58, ¶ 33; Dkt. No. 101-6, at 12). Lt. Allen responded as a result of complaints from an employee of the abortion clinic and from adjacent business owners (Dkt. No. 101, ¶¶ 42–44). Lt. Allen did not go into any of the complaining businesses to determine the noise level inside (Dkt. No. 101-6 at 12:7-9).

The parties dispute what happened next. Attached to Lt. Allen and the City's response in opposition to the second motion for summary judgment is an affidavit from one of the officers assigned to the protest: Jennifer Freeman (Dkt. No. 124-4). According to Officer Freeman, "the facts contained in [the] affidavit are based on [her] personal knowledge and [her] review of true and correct records maintained in the ordinary course of business by the City" (Dkt. No. 124-4, at 1). According to Officer Freeman, officers instructed Mr. Holick to discontinue using the amplifier system because it was disturbing businesses in the area (Dkt. No. 124-4, ¶ 3). Officer Freeman states that, when Mr. Duhe began using the microphone, Mr. Holick raised the volume; that Mr. Holick stood in the middle of the entrance to the clinic parking lot while giving vehicles a hand motion to stop; and that officers instructed Mr. Holick not to obstruct the flow of traffic into the clinic, but he did not comply with those instructions (*Id.*). Plaintiffs appear to dispute that they were given warnings prior to arrest, but they do not dispute that they were arrested for disorderly conduct (Dkt. No. 58, ¶ A10; Dkt. No. 101, ¶ 38).

The parties do not dispute that, after their arrest, Mr. Duhe and Mr. Holick were taken to the Pulaski County Regional Detention Facility ("PCRDF"). PCRDF is owned and operated by the County (Dkt. No. 125, at 8). The City and the County cooperate financially in operating PCRDF (Dkt. No. 125, at 9; Dkt. No. 122, at 22). Mr. Duhe and Mr. Holick were arrested at 9:40 a.m. on September 14, 2012; the book-in process began at approximately 10:25 a.m.; and they

were released from PCRDF at approximately 9:41 p.m., amounting to a total of approximately 12 hours in custody at PCRDF (Dkt. No. 122, at 9; Dkt. No. 122, Ex. 7, 8; Dkt. No. 122, Ex. 1, Briggs Depo., at 80, 103).

The County admits that there is no specific policy at PCRDF that requires inmates to be processed in less than 24 hours (Dkt. No. 125, ¶ 61). The County admits that it has a process to follow for citing prisoners when the jail reaches a certain headcount, but the County denies that "any" staff member can make the decision to cite and release (Dkt. No. 125, ¶ 65). The County admits that Arkansas Rule of Criminal Procedure 5.2(b) allows the ranking officer at a place of detention to issue a citation in lieu of continued custody (Dkt. No. 125, ¶ 68). The County further admits that, for plaintiffs' disorderly conduct arrests on September 14, 2012, there was automatic authority to cite and release them (Dkt. No. 122, at 6).

While the County admits that deciding when to cite and release a prisoner is at the discretion of the sergeant on the shift—and there is no policy to direct him or her—the County contends that arrestees have no right to be cited and released (Dkt. No. 122, at 7). The County maintains that it may detain a prisoner in the facility for up to 48 hours to decide whether to issue a citation and release the prisoner pursuant to Arkansas Rule of Criminal Procedure 4.1(e) (Dkt. No. 125, at 8). Plaintiffs assert that the City delegated its authority to cite and release individuals to the County (Dkt. No. 101, ¶ 79). The City and the County contend that there is no such delegation (Dkt. No. 125, at 22–23; Dkt. No. 122, at 10–11).

## II.     Analysis

### A.     Disorderly Conduct Statute

In their amended complaint, plaintiffs contend that Arkansas's disorderly conduct statute, codified at Arkansas Code Annotated § 5-71-207, is void on its face for vagueness and overbreadth

(Dkt. No. 58, ¶A112-7–A112-10). Plaintiffs maintain that the statute is unconstitutional both on its face and as applied to them (*Id.*). Plaintiffs have moved for summary judgment on this issue (Dkt. No. 100-1, at 2). Plaintiffs argue that subsections (a), (a)(2), and (a)(5) of Arkansas's disorderly conduct statute have not been authoritatively limited by Arkansas courts (Dkt. No. 100-1, at 5). Plaintiffs contend that the statute contains undefined *mens rea* and *actus rea* elements; fails to define terms such as "obstructs" or phrases such as "inconvenience, annoyance, and alarm;" has no prescribed standards for enforcement; and confers on police virtually unrestrained power to arrest and charge persons with a violation (Dkt. No. 100-1, at 6–9).

The City filed a response in opposition to plaintiffs' motion for summary judgment and filed its own motion for summary judgment in regard to the disorderly conduct statute. The City maintains that Arkansas Code Annotated § 5-2-202 contains a definition for the *mens rea* requirement of the disorderly conduct statute (Dkt. No. 126, at 12). The City also maintains that the statute is not vague and that plaintiffs' conduct on the date of their arrest constituted conduct that was clearly prohibited by the statute (*Id.*). The City contends that the disorderly conduct statute has been reviewed and upheld as constitutional by Arkansas appellate courts (Dkt. No. 126, at 14).

### 1.    Standing

As a threshold matter, the City appears to argue that plaintiffs lack standing to claim that the disorderly conduct statute is unconstitutionally vague. The City contends that plaintiffs engaged in clearly proscribed conduct and, therefore, cannot be heard to complain of the vagueness of the law as applied to the conduct of others (Dkt. No. 126, at 12). *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). The Court does not view *Village of Hoffman Estates* as applicable to at least some of the claims presented. To the extent that the City

is challenging the individual plaintiffs' standing, this Court finds that plaintiffs Mr. Duhe and Mr. Holick have standing to pursue their challenge to Arkansas's disorderly conduct statute.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the case-or-controversy requirement imposed by Article III of the Constitution." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *Lyons*, 461 U.S. at 101 (internal quotation omitted). To meet this standing requirement, a plaintiff must demonstrate that: (1) he or she has suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) the injury will be redressed by a favorable decision. *Digital Recognition Network, Inc.*, 803 F.3d at 956 (citing *Lujan*, 504 U.S. at 560-61).

Within the context of First Amendment rights, the Supreme Court has enunciated other concerns that justify a lessening of prudential limitations on standing. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). "[T]he mere threat of prosecution under the allegedly unlawful statute may have a 'chilling' effect on an individual's protected activity," and "the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." *Id.* "A party can show a cognizable injury by showing that the party's First Amendment rights have been chilled by harm to reputation or threat of criminal prosecution." *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 673 (8th Cir. 2012).

Mr. Duhe and Mr. Holick have shown that they suffered an injury in fact. Mr. Duhe and Mr. Holick allege that they were arrested for violating Arkansas's disorderly conduct statute. *See, e.g.*, *Ward v. Utah*, 321 F.3d 1263 (10th Cir. 2003) (holding that an animal-activist suffered an injury-in-fact as required for standing based on his arrest for disorderly conduct, despite the fact that the charge was eventually dismissed). The causal connection between the injury-in-fact, plaintiffs' arrests, and the statute is clear: plaintiffs were arrested for violating the statute and contend that their speech continues to be chilled because they are afraid of being arrested under the same statute in the future. If this Court declares the statute unconstitutional, then this Court's decision would redress plaintiffs' claim that their speech continues to be chilled. Thus, Mr. Duhe and Mr. Holick have satisfied each of the elements of standing identified in *Lujan*.

In reaching this conclusion, the Court is mindful that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (quotation and alteration omitted) (holding that plaintiff lacked standing to seek injunctive relief to prevent police officers from using a chokehold because he did not establish a real and immediate threat that he would again be the victim of an illegal chokehold). Here, however, Mr. Duhe and Mr. Holick allege that they suffer from continuing, present adverse effects in the form of the chilling of their First Amendment rights. *See Ward*, 321 F.3d at 1269 (animal-activist had standing to pursue challenge of a statute when he alleged that he intended to engage in protected First Amendment expression but was prevented from doing so because of fear that he would again be charged with disorderly conduct). As a result, the Court finds that Mr. Duhe and Mr. Holick have standing to bring the claims alleged in their amended complaint.

The Court notes that, while the parties have focused their arguments on the standing of Mr. Duhe and Mr. Holick, the amended complaint was filed on behalf of Mr. Holick, Mr. Duhe, and Spirit One (Dkt. No. 58). The standing analysis for an organization differs from the standing analysis for an individual. Generally, an organization can assert the standing of its members. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). To assert a claim on behalf of its members, an organization must show a concrete and particularized injury suffered by its members. *Id*. Plaintiff-organizations must make specific allegations establishing that at least one identified member had suffered or would suffer harm. *Id*. at 498. An organization can also establish "organizational standing" by showing that the organization itself suffered "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and is likely to be redressed by a favorable court decision." *People for the Ethical Treatment of Animals v. U.S. Dept. of Agricultur*e, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (quotation omitted). A "mere setback" to an organization's abstract social interest is not sufficient. *Id*.

Here, plaintiffs fail to present the Court with an argument that Spirit One, as an organization, has standing or that Spirit One may assert the standing of its members. In their motion for summary judgment, plaintiffs contend that "*both* of the plaintiffs have standing to challenge [the disorderly conduct statute]" (Dkt. No. 100-1 ¶ 4) (emphasis added), and contend that "Mr. Holick has established he feels unable to organize the type of outreach for which he was arrested, because he fears being arrested again." (*Id.*, ¶ 5). The motion does not mention Spirit One or whether it could assert organizational standing.

The burden to establish standing remains on the plaintiff, even when that plaintiff is an organization. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333,

343 (1977) (reiterating the Court's prior holding that a plaintiff organization must establish that it satisfies the Article III standing requirements)). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181 (citing *Hunt*, 432 U.S. at 343). While plaintiffs have shown that at least one member of Spirit One—Mr. Holick—has standing to sue in his own right, plaintiffs have not shown that the interests at stake are germane to Spirit One's purpose, which is part of the standing inquiry for an organization. *Id*. Thus, to the extent that plaintiffs intend to bring their challenge to Arkansas's disorderly conduct statute on behalf of Spirit One, the Court concludes that they have not met their burden of showing that the organization has standing to do so.

Having determined that Mr. Duhe and Mr. Holick have established their standing to bring the allegations of their operative complaint, but that Spirit One has not, the Court will turn to Mr. Duhe and Mr. Holick's claims in order to determine whether the action presents a genuine issue of material fact that would survive the cross-motions for summary judgment.

## 2.     Vagueness

Plaintiffs contend that Arkansas's disorderly conduct statute fails to provide fair notice of what conduct is prohibited and is therefore unconstitutionally vague. "Vagueness doctrine is an outgrowth not of the First Amendment but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). " Laws so vague that a person of common understanding cannot know what is forbidden are unconstitutional on their face." *Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971) (Black, J., concurring) (citing *Lanzetta v. New Jersey*, 306 U.S. 451 (1939); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921)). "Likewise, laws

which broadly forbid conduct or activities which are protected by the Federal Constitution, such as, for instance, the discussion of political matters, are void on their face." *Coates*, 402 U.S. 611, 616 (Black, J., concurring) (citing *Thornhill v. Alabama*, 310 U.S. 88 (1940)).

Arkansas's disorderly conduct statute provides, in relevant part:

(a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:

. . .

(2) Makes unreasonable or excessive noise; [or]

. . .

(5) Obstructs vehicular or pedestrian traffic[.]

Ark. Code Ann. § 5-71-207(a).

Also relevant to this Court's analysis is Arkansas Code Annotated § 5-2-202, which defines the four kinds of culpable mental states used in the Arkansas Criminal Code. Section 5-2-202(1) states that "[a] person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result." Subsection (3) of the same statute provides that:

(A) A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

(B) The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

Ark. Code Ann. § 5-2-202(3).

Plaintiffs contend that the Arkansas disorderly conduct statute lacks defined *mens rea* and *actus reus* elements, making it impossible to know which conduct it proscribes (Dkt. No. 100-1, ¶

11). This Court disagrees. *Actus reus* is "the wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability." *Actus Reus*, Black's Law Dictionary (10th ed. 2014). *Mens rea* is "the state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime." *Mens Rea*, Black's Law Dictionary (10th ed. 2014). The statute provides that a person commits the crime of disorderly conduct if that person purposefully or recklessly intends to "cause public inconvenience, annoyance, or alarm," by making unreasonable or excessive noise or by obstructing vehicular or pedestrian traffic. Thus, the statute provides that a specific wrongful act, making unreasonable or excessive noise or obstructing vehicular or pedestrian traffic, is criminal when performed with purposeful or reckless intent, to cause public inconvenience, annoyance, or alarm. The wrongful act and the requisite accompanying mental state are both included in the express terms of the statute.

However, though a statute may describe a wrongful act and provide for an accompanying mental state that must be proven for conviction, that statute must still withstand constitutional muster. Therefore, the Court turns to plaintiffs' contention that the disorderly conduct statute is unconstitutionally vague.

"A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304 (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). Perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity. *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (citing *Grayned*, 408 U.S. at 110). The mere fact that close cases can be

envisioned does not render a statute vague.  *See Williams*, 553 U.S. at 305–06.  "Close cases can be imagined under virtually any statute."  *Id*.  The problem close cases pose is addressed, not by the doctrine of vagueness, but instead by the requirement of proof beyond a reasonable doubt.  *See id*. (citing *In re Winship*, 397 U.S. 358, 363 (1970)).

"What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  *Williams*, 553 U.S. at 306.  Thus, the Supreme Court of the United States has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."  *Id*. (citing *Coates*, 402 U.S. at 614).

First, this Court notes that Arkansas's appellate courts have not significantly narrowed the terms or contexts for subsections (a)(2) and (a)(5) of the disorderly conduct statute.  In *Bailey v. State*, 972 S.W.2d 239 (Ark. 1998), the Arkansas Supreme Court determined that subsection (a)(3), which prohibited uses of abusive or obscene language, or the making of an obscene gesture in a manner likely to provoke a violent or disorderly response in a public place, was not facially overbroad.  *Id*. at 244.  The Arkansas Supreme Court did not address subsections (a)(1) or (a)(2) of the disorderly conduct statute because the appellant conceded that the evidence was sufficient to support his conviction under those subsections.  The dissent in *Bailey* also focused on subsection (a)(3), concluding that the conduct at issue did not amount to fighting words and taking the position that the defendant's conviction rested on an unconstitutional ground.  *Id*. at 247 (Newbern, J., dissenting).

Three years later, in *Johnson v. State*, 37 S.W.3d 191 (Ark. 2001), the Arkansas Supreme Court revisited the disorderly conduct statute.  In *Johnson*, the defendant was convicted of

violating subsection (a)(3) of the disorderly conduct statute after he cursed at a police officer, exhibited a "violent demeanor," and refused to leave a carport attached to a residence. *Id*. at 193. The majority affirmed his conviction and determined that the defendant's language in conjunction with his other actions was sufficient to constitute fighting words. *Id*. at 194. The majority noted that the conviction could have also been upheld under subsections (a)(1) and (a)(2) of the disorderly conduct statute. In his concurrence, Justice Robert Brown contended that, while the defendant was clearly cursing, there was no evidence the cursing was in a manner likely to provoke a violent or disorderly response. *Id*. at 195 (Brown, J., concurring). Thus, Justice Brown would have affirmed the conviction based solely on subsection (a)(1) or (a)(2) of the disorderly conduct statute to avoid "troublesome" First Amendment implications under subsection (a)(3). *Id*. at 196. Nothing in the majority or concurrence of *Johnson* narrows or otherwise limits the relevant sections before this Court: subsections (a)(2) and (a)(5).

In *Coates*, relied on by plaintiffs, the Supreme Court examined a city ordinance purporting to regulate assembly on public sidewalks or street corners. 402 U.S. 611. Specifically, the ordinance at issue in *Coates* made it unlawful for "three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks, street corners, vacant lots, or mouths of alleys, and there conduct themselves in a manner annoying to persons passing by, or occupants of adjacent buildings." *Id*. at 612. The Supreme Court struck down the ordinance as unconstitutionally vague on its face because it failed to specify what conduct it prohibited. *See id.* at 614. "As a result, 'men of common intelligence must necessarily guess at its meaning.'" *Id.* (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)). The ordinance in *Coates* made the status of standing in particular public areas with three or more people criminal if a third party found the gathering "annoying." According to the Court, the ordinance provided no standards for

determining what conduct would be annoying, thus denying fair notice to "men of common intelligence" of what constituted prohibited conduct. This Court concludes that the lack of a standard tying conduct to outcome is the crucial distinction between the *Coates* ordinance and Arkansas's disorderly conduct statute.

Unlike the ordinance in *Coates*, Arkansas's disorderly conduct statute provides fair notice of what conduct it prohibits. The Arkansas disorderly conduct statute requires purposeful or reckless conduct that creates unreasonable or excessive noise or obstructs vehicular or pedestrian traffic and causes public inconvenience, annoyance, or alarm. Mere inconvenience, annoyance, or alarm—alone—does not constitute disorderly conduct under the Arkansas statue. For this reason, the Arkansas statute is distinguishable from the ordinance in *Coates* because violation does not rest solely on a third party's subjective perception or reaction.

In a somewhat similar case, the Court of Appeals for the Eighth Circuit determined that an ordinance concerning road safety was vague because it failed to give people fair notice of when their action would become unlawful. *Stahl v. City of St. Louis, Mo.*, 687 F.3d 1038 (8th Cir. 2012). The ordinance at issue in *Stahl* provided:

> No person shall sell or offer for sale any goods or merchandise, display any sign or pictures, participate in or conduct an exhibition or demonstration, talk, sing or play music on any street or abutting premises, or alley in consequences of which there is such a gathering of persons or stopping of vehicles as to impede either pedestrians or vehicular traffic.

*Id*. at 1039.

The Eighth Circuit acknowledged that the language in the ordinance was not void for vagueness; rather the ordinance violated the Due Process Clause because it failed to "provide people with fair notice of when their actions are likely to become unlawful." *Id*. at 1041. The ordinance in *Stahl* "criminalize[d] speech if it ha[d] the consequence of obstructing traffic, but the

speaker [did] not know if his or her speech was criminal until *after* such an obstruction [had] occurre[d]." *Id*. (emphasis added). The ordinance's infirmity was compounded by the fact that it contained no *mens rea* requirement. That is, violation of the ordinance did not hinge on the state of mind of the potential violator but instead on the reactions of third parties. *Id*. That a person only violated the ordinance if his or her action evoked a particular response from a third party was "especially problematic because of the ordinance's resulting chilling effect on core First Amendment speech." *Id*.

The statute at issue before this Court is distinguishable from the ordinance discussed in *Stahl*. Here, the presence of a *mens rea* element curtails much of the statute's impact on protected speech. The statute before this Court requires that a potential violator act purposefully or recklessly. Furthermore, under the Arkansas disorderly conduct statute, if a person intends to engage in conduct that creates unreasonable or excessive noise or obstructs vehicular or pedestrian traffic and does not succeed, that person would not have violated the statute; whereas a person who intends to create unreasonable or excessive noise or obstruct vehicular or pedestrian traffic and does do so will have violated the statute.

The Court acknowledges that, to some degree, violation of the Arkansas disorderly conduct statute depends on the reaction of third parties. Specifically, the *mens rea* element requires that the conduct be done "with the purpose to cause public inconvenience, annoyance, or alarm" or "recklessly creating a risk of public inconvenience, annoyance, or alarm." However, the Court determines that there is good reason to distinguish the Arkansas statute from the ordinances at issue in *Coates* and *Stahl*.

In neither *Coates* nor *Stahl* do the ordinances contain a *mens rea* element that ties intent to conduct. In *Coates*, the ordinance prohibited, *inter alia*, "conduct annoying to persons passing

by." 402 U.S. at 612. The Supreme Court struck down the ordinance because "conduct that annoys some people does not annoy others," and the vagueness of the statute arises because "no standard of conduct is specified at all." *Id.* at 614. Without a definite standard of conduct, to avoid criminal liability an individual must "guess at [the statute's] meaning." *Id.* at 614.

Likewise in *Stahl*, there is no *mens rea* element within the text of the ordinance. An individual could violate the ordinance by conducting commercial business and, as a consequence, "a gathering of persons," not necessarily including the individual in violation, happened to "impede either pedestrians or vehicular traffic." 687 F.3d at 1039. An individual could violate the ordinance without having individually impeded traffic. Under the ordinance in *Stahl*, an individual could be subject to criminal sanction for the unpredictable intervening conduct of others.

An individual can more easily predict whether his or her conduct will violate the Arkansas statute as compared to the ordinances in either *Coates* or *Stahl*. The primary distinguishing feature of the Arkansas statute is the inclusion of a *mens rea* requirement tying intent to conduct. Unlike in *Coates*, that some unforeseeable third party finds certain conduct objectionable does not cause that conduct to violate the Arkansas statute. Violation of the Arkansas statute depends on whether the putative violator acted with intent to cause, or recklessly risked causing, public inconvenience, annoyance, or alarm. Unlike in *Stahl*, an individual can predict whether his or her conduct will incur liability before engaging in that course of conduct because liability under the Arkansas statute cannot arise exclusively from someone else's conduct.

An individual must evince both the requisite intent *and* conduct to violate the Arkansas statute. Thus, if an individual does not act purposefully or recklessly, but engages in conduct which happens to create unreasonable or excessive noise or impede traffic, that person will not

have violated the Arkansas statute. Conversely, if despite an individual's purposeful efforts or recklessness, that individual does not successfully cause unreasonable excessive noise or impede traffic, then that person will not have violated the Arkansas statute. Due to the inclusion of the *mens rea* requirement, an individual can predict whether a future course of conduct will violate the statute. For these reasons, this Court concludes that the Arkansas disorderly conduct statute does not offend due process because it provides fair notice to the reasonable person.

### 3. Overbreadth

Plaintiffs next challenge the statue on the grounds that it is overly broad. Unlike the vagueness doctrine, the overbreadth doctrine derives from the First Amendment. "According to [the] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. "The doctrine seeks to strike a balance between competing social costs." *Id.* (citing *Virginia v. Hicks*, 539 U.S. 113, 119–120 (2003)). "On the one hand, the threat of enforcement of an overly broad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." *Williams*, 553 U.S. at 292. "On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects." *Id.* To maintain an appropriate balance, courts should not strike down a statute as facially invalid under this doctrine unless the statute's overbreadth is "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 293 (emphasis in original) (citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Williams*, 553 U.S. at 293 (citations and quotations omitted).

"The first step in the overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* To reiterate, Arkansas's disorderly conduct statute proscribes purposeful or reckless conduct that results in, or creates a risk of, public inconvenience, annoyance, or alarm by making unreasonable or excessive noise or obstructing vehicular or pedestrian traffic, among other things. Ark. Code Ann. § 5-71-207(a)(2), (a)(5). As related above, the statute includes a scienter requirement: A person must act purposefully or recklessly with regard to creating one of the listed outcomes.

The Court acknowledges that the statute contains some words the meanings of which are subjective, including inconvenience, annoyance, or alarm. These words may vary in definition from person to person. However, the reach of the statute is curtailed by words the meanings of which are more objective. Specifically, "excessive noise" or "obstructing vehicular or pedestrian traffic" are more objective outcomes prohibited by the statute.

### 4. Form Of Speech Regulation

While neither impermissibly vague nor overbroad, the disorderly conduct statute still must withstand First Amendment scrutiny. The first step in the First Amendment analysis is to determine whether the regulation is impermissible viewpoint discrimination or is instead a content-neutral regulation. Government regulation of expressive activity is content-neutral so long as it is "justified without reference to the content of the regulated speech." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984). The statute in question prohibits only a particular manner of speech, *i.e.*, speech that purposefully or recklessly result in excessive noise or the obstruction of vehicular or pedestrian traffic. Essentially, the disorderly conduct statute represents a content-neutral manner restriction in that it does not restrict speech based on topic;

nor does it restrict when and where such speech may take place. *Ward*, 491 U.S. at 791. The conduct is not prohibited based on the content of the speech itself but instead on the manner in which that speech is conveyed.

Having determined that the regulation is content-neutral, the Court must now review the statute to see whether it contains permissible time, place, and manner restrictions. The pertinent test requires this Court to apply intermediate scrutiny—whether the ordinance is narrowly tailored to achieve a significant government interest and leaves open ample alternative channels of communication. *Phelps–Roper v. City of Manchester, Mo.*, 697 F.3d 678, 686 (8th Cir. 2012) (citing *Ward*, 491 U.S. at 791).

### a.     Government Interest

Plaintiffs were engaged in speech that is protected by the First Amendment; however, even this right is not absolute. *See Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (acknowledging that, while an anti-abortion protestor has a clearly established right to express his views about abortion in a public forum, that right is not absolute since it is subject to proper time, place, and manner regulations). Courts have upheld ordinances that prohibit excessive noise, even when the noise is made up of speech or expression protected under the First Amendment. *See, e.g.*, *Habiger*, 80 F.3d at 295–97; *Carew-Reid v. Metropolitan Transp. Auth.*, 903 F.2d 914 (2nd Cir. 1990) (amplifier ban designed to prevent excessive noise on subway platforms does not violate the First Amendment if it is content neutral time, place, and manner restriction that was narrowly tailored to serve a significant governmental interest); *see also Costello v. City of Burlington,* 632 F.3d 41 (2nd Cir. 2011) (affirming ordinance violation by street preacher whose unamplified voice constituted excessive noise).

"The elimination of excessive noise is a substantial and laudable goal." *Carew-Reid*, 903 F.2d at 917 (citing *Ward*, 491 U.S. at 795; *Grayned*, 408 U.S. at 116; *Kovacs v. Cooper*, 336 U.S. 77, 87–88 (1949) (plurality opinion)). "[G]overnment 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'" *Ward*, 491 U.S. at 796 (quoting *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984)). The Eighth Circuit has held that a prohibition on excessive noise may be a proper, time, place and manner regulation. *See Habiger*, 80 F.3d at 295. Thus, this Court concludes that the elimination of excessive noise is a substantial or significant interest of the government.

Likewise, the Supreme Court has determined that the government has a legitimate and substantial interest in ensuring public safety and order and promoting the free flow of traffic on streets and sidewalks. *McCullen v. Coakley*, 134 S.Ct. 2518 (2014). Governmental authorities have the duty and responsibility to keep their streets open and available for movement. *Cox v. State of La.*, 379 U.S. 536, 554–55 (1965). The free and safe flow of traffic on public streets and sidewalks is a substantial government interest.

### b. Narrowly tailored

Satisfied that the statute reflects a significant government interest in the reduction of excessive noise and the free and safe flow of traffic on public streets and sidewalks, this Court must ask whether the government narrowly tailored the statute to achieve that interest. The Supreme Court has emphasized that the government does not need to show the regulation utilizes the least restrictive means of achieving the government interest. A speech-restrictive regulation will satisfy the narrow tailoring requirement so long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 798–99 (footnote omitted) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). "[W]hen a

content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement, even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill v. Colorado*, 530 U.S. 703, 726 (2000).

Here, the statutory scheme does not entirely foreclose any means of communication. Rather, the statute prohibits only certain types of communication or behavior: that which intentionally or recklessly causes unreasonable or excessive noise or obstructs vehicular or pedestrian traffic. The statute provides no restriction on the location of speech (*i.e.*, the statute does not limit itself to hospitals, medical facilities, or healthcare facilities). The statute places very few limitations on a speaker. The statute prohibits both unamplified and amplified noise, if it is unreasonable or excessive or obstructs traffic. The statute does not prohibit the dissemination of leaflets or pamphlets. The statute does not limit groups of speakers to a certain number. It does not require speakers to stand a certain distance away from particular buildings or locations.

Speakers can reasonably convey their message—any message—as long as they do not purposefully or recklessly create unreasonable or excessive noise or obstruct vehicular or pedestrian traffic. Speakers can express their viewpoint or discuss any topic at nearly any location and at nearly anytime. Therefore, this Court concludes that the statute is narrowly tailored to address only the substantial government interests in preventing excessive noise and promoting the safe and free flow of traffic, and the statute leaves open ample alternative methods of conveying a message.

### 5. Unrestricted Discretion

Plaintiffs contend that Arkansas's disorderly conduct statute vests unrestrained discretion in police officers charged with enforcement of its provisions. A grant of unrestrained discretion to an official responsible for monitoring and regulating First Amendment activities is facially

unconstitutional. *Thomas v. Chic. Park Dist.*, 534 U.S. 316, 323 (2002). A regulation must "contain adequate standards to guide the official's decision. . . ." *Id.* (upholding an ordinance providing that the park district "may" deny a permit, required for conducting a more-than-50 person event in a municipal park, when, among other things, a permit had been granted to an earlier applicant for the same time and place, or when the intended use would present an unreasonable danger to the safety of park users and grounds); *Douglas v. Brownell*, 88 F.3d 1511, 1523 (8th Cir. 1996) (holding that a parade ordinance that required the chief of police to issue a permit unless the time, route, or size of a parade would disrupt use of a street ordinarily subject to significant congestion or traffic, did not give the chief of police too much discretion in violation of First Amendment; the exception was based on objective factors and did not allow the chief of police to consider the content or purpose of a parade). The Supreme Court has struck down license or permit statutes and ordinances that lodge broad discretion in a public official to determine which expressions of views will be permitted and which will not. Outside of license and permit requirements, the Supreme Court has acknowledged that "[i]t is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups by selective enforcement of an extremely broad prohibitory statute." *Cox*, 379 U.S. at 557–58.

Here, plaintiffs have not presented any record evidence showing a pattern or practice of invidious discrimination or selective enforcement of Arkansas's disorderly conduct statute. The City has presented record evidence tending to show that anti-abortion, or pro-life, demonstrations occurred at LRFPS without any arrests (Dkt. No. 124, Kiser Depo., at 14:8-9; 18:11-18). The Court is aware that the statute contains no decibel restriction that would serve as a bright line for determining when noise has reached the unreasonable or excessive levels. Likewise, it is not

restricted to amplified noise, and the Arkansas Supreme Court seems to presume that a person could violate the statute merely by yelling. *See Johnson*, 37 S.W.3d 191. Thus, the statute does not provide meticulous specificity. Despite this, it is clear what the statute as a whole prohibits: unreasonable or excessive noise created purposefully or recklessly and conduct that obstructs vehicular or pedestrian traffic purposefully or recklessly.

The statute does not permit a broad power to punish all noises, only those that are unreasonable or excessive and created purposefully or recklessly. Enforcement requires the exercise of some degree of police judgment, but, confined as it is by the language of the statute, that degree of judgment is permissible. *Grayned*, 408 U.S. 104 (holding that a noise ordinance prohibiting noisy or diversionary activity that disrupts normal school activities does not delegate an impermissible level of discretion). Thus, this Court concludes that Arkansas's disorderly conduct statute does not delegate unbridled discretion concerning enforcement.

For these reasons, this Court concludes that Arkansas's disorderly conduct statute, codified at Arkansas Code Annotated § 5-71-207, does not violate the First or Fifth Amendment. The Court denies plaintiffs' request for a declaratory judgment striking the statute, and grants defendants' motion for summary judgment.

### B. Little Rock Permit Ordinances

Plaintiffs' next contention is that, at the time of plaintiffs' arrest, the definition of "public assembly" in Little Rock City Ordinance §§ 32-546 and 32-551 rendered the ordinance void for vagueness (Dkt. No. 100-1, at 15). Plaintiffs contend that the prior version of Little Rock City Ordinance § 32-546 failed to define a minimum number of persons whose gathering in a "place open to the public" required a permit (*Id.*). Plaintiffs contend that, as a result, that ordinance was unconstitutionally vague when allegedly used as a threat against them (*Id.* at 18).

The City argues that the plaintiffs lack standing to challenge the two ordinances. In addition, the City contends that the ordinances were amended in March 2015 to provide a definition for the term "public assembly." The term "public assembly," for the purposes of these ordinances, according to the City, now means "any meeting, demonstration, picket line, rally, or gathering of more than twenty (20) persons for a common purpose as a result of prior planning that interferes with the normal flow or regulation of pedestrian or vehicular traffic or occupies any public area in a place open to the general public" (Dkt. No. 126, at 25).

The Court declines to reach plaintiffs' argument regarding Little Rock Ordinance §§ 32-546 and 32-551. The Court concludes that, because the plaintiffs were not charged or arrested for violating the permit statutes, and they were not prevented from protesting because of their lack of a permit, plaintiffs do not have standing to challenge the ordinances at issue. Thus, plaintiffs have not shown that they suffered any particularized or concrete injury from the permit ordinance.

Due to the amendment of the ordinance, plaintiffs' argument is now moot. For mootness, the "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (quoting *Friends of the Earth*, 528 U.S. at 170). The exception to mootness for claims that are "capable of repetition yet evading review" will "rescue an otherwise moot claim if (1) the challenged conduct is of too short a duration to be litigated fully prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (quoting *National Right To Life Political Action Committee v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003)). The question is "whether the controversy was *capable* of repetition and not . . . whether the claimant had

demonstrated that a recurrence of the dispute was more probable than not." *Id.* (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988)).

While the threat of enforcement might be sufficient to establish standing had the ordinance not been amended, the amendment to the ordinance negates that possibility. It is undisputed that Little Rock City Ordinance No. 21006 amended the definition of "public assembly" and now includes a specific number of persons that triggers the need for a permit. As related by the affidavit of City Director Bruce Moore, "[p]rior to March 3, 2015, the definition of public assembly did not contain a specific number of persons that triggered the need to apply for a public assembly permit" (Dkt. No. 28-1, at 2). On March 3, 2015, the City Board of Directors passed Little Rock Ordinance No. 21,006 (*Id.*). This ordinance redefines what constitutes a public assembly to be "any meeting, demonstration, picket line, rally, or gathering of more than twenty (20) persons for a common purpose as a result of prior planning that interferes with the normal flow or regulation of pedestrian or vehicular traffic or occupies any public area in a place open to the general public." (Dkt. No. 28-20, at 2, Little Rock, Ark., Rev. Code § 32-546). Director Moore indicates that, so long as the applicant meets the criteria set forth in the city ordinance, he "do[es] not have any discretion in the decision of whether to issue the public assembly permit" (Dkt. No. 28-1, at 3; Little Rock, Ark., Rev. Code § 32-551).

There is little risk that in the future plaintiffs will be subject to the permit requirement if they gather in a group of fewer than 20 persons. Moreover, the amendment is more than a voluntary cessation of activity because the there is no evidence that the City intends to reenact the repealed ordinance, nor that any such action could evade review. *See Teague v. Cooper*, 720 F.3d 973 (8th Cir. 2013) (quoting *Epp v. Kerrey*, 964 F.2d 754, 755 (8th Cir. 1992)) (internal quotations omitted). The City cannot simply return to operating under the prior definition of "public

assembly," which did not contain a definite number, once this litigation ends. Instead, the City is now bound by the amended definition. For these reasons, the Court declines to address plaintiffs' arguments regarding the Little Rock Permit Ordinance.

Plaintiffs also contend that Little Rock City Ordinance § 32-551 remains undefined and is a facially unconstitutional prior restraint because it fails to contain adequate standards to guide the city manager's decisions (Dkt. No. 100-1, at 18). Plaintiffs maintain that certain terms in § 32-551 are undefined and that, as a result, the terms do not limit the government's ability to define the conditions for granting a permit (Dkt. No. 100-1, at 19). Plaintiffs contend that § 32-551 leaves the City with "standardless discretion" to deny a public assembly permit on the basis of "undetectable censorship" and a "lack of narrow tailoring" (Dkt. No. 100-1, at 20).

The City contends that the ordinance meets the requirements of the First Amendment (Dkt. No. 126, at 31). The City contends that plaintiffs lack standing to pursue their challenge to § 32-551 for the reasons previously stated, namely, that plaintiffs were not charged with violating that ordinance and so they can show no injury as a result of the ordinance.

The Court agrees that plaintiffs have not shown any injury as a result of § 32-551. Although it is undisputed that Lt. Allen told plaintiffs that they did not have a permit for their protest (Dkt. No. 125, ¶22), plaintiffs were not charged with violating that ordinance nor were plaintiffs issued a ticket for violating that ordinance. Therefore, the Court declines to reach this argument.

### C.     First Amendment As-Applied Challenge to Arrest[2]

---

[2] The City and Lt. Allen suggest that, at this stage, plaintiffs attempt to raise a claim alleging a denial of equal protection by suggesting that plaintiffs were subjected to different scrutiny or treatment because they are from other states (Dkt. No. 154, at 4). This Court will not permit plaintiffs to amend their operative complaint at this stage of the litigation to assert an equal protection claim that was not pleaded earlier. Because the Court will not permit this amendment, the Court will not address plaintiffs' arguments regarding this claim.

In addition, plaintiffs claim that their arrests amounted to a violation of their First Amendment rights to freedom of speech and free exercise of religion due to their arrest during the protest. They contend that they were arrested without warrants while peacefully gathered on a public sidewalk with less than ten persons and that this arrest was unlawful (Dkt. No. 100-1, at 20). They contend that police stopped Mr. Duhe and Mr. Holick from using a microphone, handing out literature at a driveway, talking about options other than abortion, reading from the Bible, and making use of the amplifier for religious speech (*Id.*). They contend that they were engaged in expressive conduct that did not amount to fighting words (Dkt. No. 100-1, at 21). Taken together, the Court considers these claims as an as-applied challenge to the Arkansas disorderly because plaintiffs allege that the disorderly conduct statute was applied in an unconstitutional manner. *See Republican Party of Minn., Third Congressional Dist. V. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004); *see also Fort Des Moines Church of Christ v. Jackson*, 2016 WL 6089842 at *17-18 (S.D. Iowa, Oct. 14, 2016).

The City contends that plaintiffs were not prevented from engaging in any of the conduct plaintiffs describe (Dkt. No. 126, at 40). The City maintains that plaintiffs had been permitted to use the microphone, preach, and handout literature for about two or two and one half hours before they were arrested (Dkt. No. 126, at 40–41). The City contends that plaintiffs were arrested only after they continued to use the amplifier at a level that interfered with the ability of two businesses in the area to conduct business in a manner that allowed them to have conversations with their patients while inside their places of business (Dkt. No. 126, at 45). The City contends that the content of plaintiffs' message had nothing to do with their arrests (Dkt. No. 126, at 46).

"The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are

presumptively invalid." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) (internal citations and quotations omitted). However, the Court has recognized that states have the "power to proscribe particular speech on the basis of a noncontent element (*e.g.*, noise)," even though states lack the power to proscribe the same speech on the basis of a content element. *Id.* at 386.

Here, Mr. Duhe and Mr. Holick were arrested for violating the disorderly conduct statute. There is no evidence in the record before this Court that they were arrested as a result of the content of their speech, handouts, or other activities. Absent such evidence, this Court cannot conclude that Mr. Duhe or Mr. Holick's First Amendment rights were violated in the manner they allege.

To the extent the City moves for summary judgment on Mr. Duhe and Mr. Holick's First Amendment claim, characterizing it as a First Amendment retaliation claim, the Court finds the City is entitled to judgment as a matter of law on this claim (Dkt. No. 135, at 9–19). To establish such a claim, plaintiffs must show: (1) they engaged in a protected activity, (2) government officials took adverse action against them that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Bennie v. Munn*, 2016 WL 2731577, at *4 (8th Cir. May 11, 2016); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). In retaliatory arrest cases, the Eighth Circuit has identified a fourth prong: (4) lack of probable cause to arrest. *Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012) (citing *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010)).

Based on the undisputed record evidence, plaintiffs have not established a *prima facie* case. They have not established that the adverse action about which they complain was motivated at least in part by the exercise of the protected activity for the reasons discussed above. Further, they have not established that Lt. Allen lacked probable cause to arrest for the reasons explained by this

Court in analyzing plaintiffs' Fourth Amendment claim. For these reasons, the City is entitled to summary judgment on plaintiffs' First Amendment retaliation claim.

### D.    Fourth Amendment

Mr. Duhe and Mr. Holick contend that they were deprived of their Fourth Amendment right to be free from arrest without probable cause or reasonable suspicion (Dkt. No. 100-1, at 21). They contend that their arrests were without probable cause "because of clearly established law, and in the alternative, because of factual insufficiency for their arrests. . . ." (*Id.*). The City contends that, based on undisputed record facts, Lt. Allen had probable cause to arrest Mr. Duhe and Mr. Holick and, therefore, did not violate their Fourth Amendment rights (Dkt. No. 135, at 21). In the alternative, the City maintains that Lt. Allen is entitled to qualified immunity in his individual capacity as to Mr. Duhe and Mr. Holick's Fourth Amendment claim (Dkt. No. 135, at 27).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)) (internal citations omitted). "In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), the Supreme Court held that '[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—

not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotation omitted). A "reasonable ground for belief" means "more than bare suspicion," but "less than evidence which would justify condemnation or conviction." *Id.* (internal quotations omitted). "Probable cause exists where the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 175–76 (internal quotation and brackets omitted).

At the time of Mr. Duhe and Mr. Holick's arrests, it is undisputed that Lt. Allen was called out by Officer Ronnie Morgan to 4 Office Park Drive at about 8:30 or 9:00 a.m. due to complaints about noise and people impeding the flow of traffic (Dkt. No. 124-27, at 263:8-10, 264:1-2). When Lt. Allen approached the area of 4 Office Park Drive after being advised of complaints due to the volume of speaking, he could hear someone speaking with the amplifier from a city block away (Dkt. No. 124-3, at 3). Lt. Allen testified that two of the noise complaints came from Ms. Teague and Ms. Williams (Dkt. No. 124-27, at 265:16-25, 266:1). The substance of the complaints, according to Lt. Allen, was that the volume was so loud that the complaining parties were having difficulties conducting their day-to-day business (*Id.* at 266:14-24).

Ms. Teague, of Teague Vision Center, testified that she could hear the protestors from inside her building and that it disturbed her business (Dkt. No. 124-24, at 50:3–4). Ms. Teague testified that she walked out to a police officer and told him that the noise was disturbing her business and asked "could he please do something about it." (*Id.* at 60–61). Ms. Teague described the noise as "annoying" (*Id.* at 61:18). Ms. Williams, the LRFPS director, testified that on the date

Mr. Duhe and Mr. Holick conducted their protest, the volume was louder than normal and that she could hear the noises of the protestors speaking and yelling while she was inside the LRFPS clinic (Dkt. No. 124-23 at 44:15–19). Ms. Williams testified that she was able to hear the protestors in multiple rooms of the clinic and while she was in a private counseling room attempting to speak with a patient; the level of the volume interrupted her ability to have a conversation with her patients (*Id.* at 52:9-14, 66:3-11). Ms. Williams testified that more than one but fewer than ten patients called and said they were rescheduling appointments due to the protest activities (*Id*. at 20–24). Ms. Williams testified that she made a complaint regarding the noise (*Id*. at 70:7–8).

Lt. Allen testified that he received a call from another officer, Officer Ronnie Morgan, reporting that two individuals at 4 Office Park drive were impeding the flow of traffic (Dkt. No. 124-27, at 264:1–3). Lt. Allen testified that the officer reported that the individuals had been given warnings but were continuing to walk past the driveway as people entered the driveway, impeding their flow, and that people had made noise complaints (*Id*. at 13–16). When Lt. Allen arrived at 4 Office Park Drive, Mr. Holick was identified by officers as one of the individuals who was impeding the flow of traffic (*Id.* at 269:4-25).

Mr. Duhe was arrested for violating the disorderly conduct statute, specifically the excessive noise provision of that statute. Under Arkansas law, a person may be arrested for disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, a person makes unreasonable or excessive noise. Ark. Code Ann. § 5-71-207(a)(2). When deciding whether to arrest a subject, "[o]fficers may 'rely on the veracity of information supplied by the victim of a crime.'" *Borgman*, 646 F.3d at 523 (quoting *Fisher*, 619 F.3d at 817); *see also Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("[A]n officer may make an arrest if a credible eyewitness claims

to have seen the suspect commit the crime. . . .").  "In considering information given by a victim of a crime, an officer need not conduct a 'mini-trial' before effectuating an arrest although he cannot avoid 'minimal further investigation' if it would have exonerated the suspect."  *Borgman*, 646 F.3d at 523 (quoting *Kuehl*, 173 F.3d at 650).  In other words, "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence. . . ."  *Kuehl*, 173 F.3d at 650.

Lt. Allen remained at the scene for a time and personally observed Mr. Holick and Mr. Duhe continue to utilize the microphone and amplifier at an excessively high volume (Dkt. No. 124-27, at 297:17-25, 298:1-8).  Only then did Lt. Allen arrest Mr. Holick and Mr. Duhe.

Mr. Holick was arrested for violating the disorderly conduct statute, specifically the excessive noise and obstruction of traffic provisions.  Ms. Teague and Ms. Williams's accounts, along with Lt. Allen's personal observations, provide arguable probable cause for an arrest for disorderly conduct based on excessive noise.  *See Gilmore*, 837 F.3d at 832.  Ms. Teague and Ms. Williams each reported that the noise could be heard inside their businesses and that the noise disrupted their businesses.  Lt. Allen testified that he could hear the amplified speaking from a city block away.  Moreover, two officers at the scene witnessed Mr. Holick stopping cars by obstructing the driveway of the office building, thereby providing probable cause for an arrest for disorderly conduct based on obstruction of vehicular traffic.  Mr. Duhe was arrested for violating the disorderly conduct statute, specifically the excessive noise provision.  Again, Ms. Teague and Ms. Williams's accounts, along with Lt. Allen's personal observations, provide probable cause for an arrest for disorderly conduct based on excessive noise.

While Mr. Holick and Mr. Duhe were not convicted of the disorderly conduct charges, later conviction is not the standard for probable cause to arrest.  "The fact that the person arrested is later found innocent is not material."  *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (citing

*Linn v. Garcia*, 531 F.3d 855, 861 (8th Cir. 1976)); *see Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("eventual innocence irrelevant to claim of deprivation of liberty without due process of law.")  For these reasons, the Court concludes there was no Fourth Amendment constitutional violation because there was probable cause to support their arrests.

### E.    Lt. Allen's Qualified Immunity

Even if Lt. Allen committed a constitutional violation as plaintiffs allege by arresting them, he is entitled to qualified immunity.  "Qualified immunity shields agents . . . from suit for damages if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' *Hunter*, 502 U.S. at 229.

Lt. Allen made a decision to arrest Mr. Holick and Mr. Duhe based on a statute that had never been held unconstitutional by any Arkansas state court, the Eastern District of Arkansas, the Eighth Circuit, or the Supreme Court.  In reaching its determination regarding qualified immunity, this Court has considered the analysis and holdings in *Johnson v. State*, 37 S.W.3d 191 (2001), and *Roe v. Graham*, 2010 WL 4916328 (E.D. Ark. November 23, 2010).  When making the decision to arrest, Lt. Allen relied on his own personal observations, the observations of other officers, and the complaints of citizens.  The Court concludes that the excessive noise created by the use of the amplifier disrupted the work of two businesses and that two officers reported that Mr. Holick stopped cars by obstructing the driveway of the office building.  Like the officer in *Roe*, Lt. Allen reasonably determined that he had probable cause to arrest plaintiffs under the disorderly conduct statute.  Even if he was mistaken about probable cause, that mistake was

objectively reasonable given the state of the law regarding Arkansas's disorderly conduct statute and the undisputed record facts here.

### F.     Claims Against Lt. Allen In His Official Capacity And The City

Plaintiffs also claim that Lt. Allen, in his official capacity, and the City violated their First and Fourth Amendment rights.  Specifically, plaintiffs claim that their arrests occurred pursuant to an official decision, policy, practice, custom or usage of the City to arrest individuals for engaging in the exercise of First Amendment rights such as the free exercise of religion, freedom of speech, freedom of assembly, and freedom of association (Dkt. No. 58-1, ¶¶ 84, 101).  Plaintiffs also claim they were arrested without probable cause due to a deficient City policy, procedure, custom, or usage (Dkt. No. 58-1, ¶¶ 88, 105).

The City may be held liable as a "person" under 42 U.S.C. § 1983.  *See Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  However, the City may not be held vicariously liable for the acts of its employees; instead, "a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." *Turner v. Waterbury*, 375 F.3d 756, 761-762 (8th Cir. 2004) (quoting *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2002)). To impose liability on a municipality under § 1983, a plaintiff must identify a custom or policy that caused the alleged injury.  *Board of County Com'rs of Bryan County Okl. v. Brown*, 520 U.S. 397, 403 (1997).  Lawsuits against municipal employees in their official capacities are tantamount to a lawsuit against the municipality itself.  *See Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998).  In sum, the suit against Lt. Allen in his official capacity requires the same showing as does the claim against the City itself:  that a policy or custom caused the alleged violation.

To the extent plaintiffs contend that the City's public assembly permit ordinance and the Arkansas disorderly conduct statute are unconstitutional policies of the City, the Court agrees with the City that plaintiffs' argument fails. The balance of the record evidence indicates that Mr. Duhe and Mr. Holick were arrested pursuant to the Arkansas disorderly conduct statute, not the City's public assembly permit ordinance. Even assuming that plaintiffs were able to establish a genuine issue of material fact regarding whether their arrest was predicated upon a putative violation of the City's permit ordinance, plaintiffs' claims premised on the permit ordinance are now moot for the reasons explained in this Order.

As for the disorderly conduct statute, it has not been declared unconstitutional by any court in Arkansas, the Eastern District of Arkansas, the Eighth Circuit, or the Supreme Court. For the reasons set forth in this Order, this Court declines to find the statute unconstitutional. Plaintiffs cannot establish that the City had a policy that required the arrest of individuals for violating an unconstitutional disorderly conduct statute.

To the extent plaintiffs seek to establish liability based on a custom or practice of unconstitutional conduct, to do so, plaintiffs must prove: (1) the existence of a continuing, widespread pattern of unconstitutional misconduct by employees, (2) deliberate indifference to or tacit authorization of such misconduct by the governmental entity's policymaking officials after notice of the misconduct, and (3) the custom was the moving force behind the alleged constitutional violation. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The prior pattern of unconstitutional conduct "must be so persistent and widespread as to have the force and effect of law," and the pattern must have caused the plaintiff's alleged injury. *Rogers*, 152 F.3d at 799. To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of misconduct and

deliberately failed to take remedial action." *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992). Further, there must also be some showing that the prior complaints had merit. *Rogers*, 152 F.3d at 799. Plaintiffs present insufficient record evidence on these points to survive the pending motion for summary judgment.

Finally, there is no indication in plaintiffs' amended complaint that plaintiffs intend to bring a claim for failure to train, which requires specific pleading and does not fall under the general language of "custom, policy, or practice." See *Sexton v. Hutton*, 2008 WL 621077 (E.D. Ark. March 4, 2008).

The undisputed record facts do not support plaintiffs' claims against the City and Lt. Allen in his official capacity. Given the absence of record evidence or citation that any reviewing court has struck down the Arkansas disorderly conduct statute, there would have been no reason for either the City or Lt. Allen to have determined Arkansas's disorderly conduct statute to be unconstitutional under "clearly established law." *See Shekleton v. Eichenberger*, 677 F.3d 361, 367 (8th Cir. 2012). Thus, both the City and Lt. Allen in his official capacity are entitled to judgment as a matter of law on the claim of unconstitutional arrest under the First and Fourth Amendments.

### G.    Liability of the County[3]

After they were arrested on September 14, 2012, plaintiffs were transported to the PCRDF where they went through the intake process followed according to procedures promulgated by the Pulaski County Sheriff's Office. Plaintiffs allege that the County is liable for detaining them

---

[3] This Court will not permit plaintiffs to amend their operative complaint at this stage of the litigation to assert a claim for cruel and unusual punishment that was not pleaded earlier (Dkt. No. 152, at 7-8). Because the Court will not permit this amendment, the Court will not address plaintiffs' arguments regarding these claims.

beyond the actual time required to complete the booking process for a person who is arrested and for permitting mugshots taken of plaintiffs to be displayed and republished by others on the internet.

The County moves for summary judgment on these claims, contending that: (1) plaintiffs had no right to citation and release from PCRDF, (2) any delay in the release of plaintiffs from PCRDF did not rise to the level of a constitutional violation because there is no evidence that the delay was unreasonable, (3) plaintiffs cannot establish that the alleged unreasonable delay was due to a Pulaski County custom or policy, and (4) the interlocal agreement between the County and City does not create contractual liability between the County and City (Dkt. No. 140, at 2). The Court grants the County's motion for summary judgment (Dkt. No. 138).

### 1. Length Of Detention

The Fourth Amendment does not prohibit arrest and pretrial detention for a minor criminal offense. *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). Individuals arrested without an arrest warrant must be given a probable cause hearing within 48 hours and without unreasonable delay. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975)). Examples of unreasonable delay include "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside*, 500 U.S. at 56. If the probable cause hearing or other release occurs within 48 hours, the burden is on the arrestee to establish unreasonable delay. *United States v. Davis*, 174 F.3d 941, 944 (8th Cir. 1999) (citing *County of Riverside*, 500 U.S. at 56); *see also Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (holding that "[a]ny probable cause determination before the 48-hour mark is presumptively reasonable and the burden of showing otherwise falls to the person arrested").

Here, it is undisputed that plaintiffs were held for less than 48 hours. Thus, it is the plaintiffs' burden to establish unreasonable delay during the course of their detentions. Plaintiffs fail to meet this burden. "It is not the length of detention that determines whether a constitutional violation has occurred, it is whether the detention was unjustifiably prolonged." *Smith v. Eggbrecht*, 414 F.Supp.2d 882, 884-86 (W.D. Ark. 2005) (arrestee presented statements from arresting officer that officer intended to delay processing so as to successfully present evidence of delay for delay's sake). Plaintiffs present no record evidence comparable to that produced in *Smith* to support their claim. Instead, the County has presented undisputed record evidence that, on the day of plaintiffs' detention, the everyday activities of the PCRDF affected the processing times of all arrestees, including plaintiffs. Further, plaintiffs have presented no record evidence to support their claim that the County had a policy or custom that led to the alleged constitutional violations. As a result, no reasonable jury could conclude that plaintiffs' release was delayed for delay's sake or that a constitutional violation occurred.

Plaintiffs are not entitled to a jury trial on this issue, based on the record evidence before the Court at this stage of the proceeding. The cases upon which plaintiffs rely to argue that the unreasonableness of the length of detention is a jury question include *Brown v. Sudduth*, 675 F.3d 472, 480 (5th Cir. 2012); *Chortek v. City of Milwaukee*, 356 F.3d 740, 747 (7th Cir. 2004); and *Berry v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004). These cases are persuasive, not controlling, authority. Most recite the same standards as this Court applies. *See Chortek*, 356 F.3d at 747; *Berry*, 379 F.3d at 769. Some involve entirely different circumstances from those presented here. *Cf. Brown*, 675 F.3d at 480 (examining the circumstances of a detention that exceeded 48 hours). These cases do not persuade this Court that plaintiffs are entitled to a jury trial on this issue.

## 2.  Publication Of Photos

The County also moved for summary judgment on plaintiffs' claims regarding the publication of their mugshots, and plaintiffs failed to respond to this claim, thereby waiving it. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. Of Trustees*, 558 F.3d 731, 735 (8th Cir. 209) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). The County also is entitled to summary judgment on this claim based on the merits. The County contends that plaintiffs have no constitutionally protected right associated with their booking photographs and that, as a result, the County is entitled to summary judgment on these claims (Dkt. No. 140, at 2).

There is no liberty or property interest protected by the Fourteenth Amendment in a photograph or other information disseminated by the state when the case rests only on damage to reputation. Such a claim is "nothing more than a state law defamation claim." *Simes v. Ark. Judicial Discipline and Disability Comm'n*, 734 F.3d 830, 834 (8th Cir. 2013). "The loss of reputation must be coupled with some other tangible element to rise to the level of a protectable property interest." *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003). With documenting official police action such as arrest, "no right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest." *Holman v. Central Arkansas Broadcasting Co.*, 610 F. 2d 542, 544 (8th Cir. 1979). There is no basis for plaintiffs' constitutional claim here, as plaintiffs have no record evidence that the publication of their photographs and charges harmed their employability. The mere possibility of interference with prospective employment, especially on the record facts before the Court, is insufficient. Further, the undisputed facts do not support state law claims for false light invasion of privacy, outrage, or defamation under Arkansas state law, claims which this Court declines to address. *See Simes*, 734 F.3d at 834-835.

## H.    City Liability Based On PCRDF

Along with claiming that the County is liable, plaintiffs seek to hold the City liable for the same alleged constitutional violations.  To hold the City liable on this claim, plaintiffs must identify an unconstitutional City custom, policy, or practice that was the moving force behind the alleged violation of plaintiffs' rights.  *Luckert v. Dodge County*, 684 F.3d 808, 820 (8th Cir. 2012).  Plaintiffs do not allege that the City had any role in adopting any of the policies followed at the PCRDF nor have they identified a custom or practice of unconstitutional conducted on the part of the City that led to any constitutional violations at the PCRDF.  As stated above, there is no constitutional infirmity in the County's policy of allowing up to 48 hours of pretrial detention.  *See County of Riverside*, 500 U.S. at 56.  The record evidence does not indicate any unreasonable delay occasioned during the detentions of Mr. Duhe or Mr. Holick on the part of either the City or the County.  Therefore, the City is entitled to summary judgment on this claim.

By law, county sheriffs within Arkansas have the responsibility for managing the populations and operations of the jail within their counties.  *See* Ark. Code Ann. §§ 12-41-502, 12-41-503(a).  The Court declines to find the funding arrangement accomplished through an interlocal agreement pursuant to the Interlocal Corporation Act, Ark. Code Ann. §§ 25-20-101 to 108, as a basis for plaintiffs' claims against the City.  To the extent this is a claim under *respondeat superior*, such a claim can provide no basis for liability against a municipality under § 1983.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-695 (1978)).

Likewise, the case of *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001), is distinguishable from the facts of this case such that it does not serve as a basis for plaintiffs' claims against the City.  Unlike in *Young*, there was no court order for the release of either Mr. Duhe or

Mr. Holick. There was no legal duty mandating that the City ensure the release of Mr. Duhe or Mr. Holick prior to their ultimate release by PCDF in advance of the pretrial detention hearing. Therefore, the City is entitled to summary judgment on this claim.

## I. Attorney's Fees

Because none of their underlying substantive claims remain actionable, plaintiffs are not entitled to attorney's fees under 42 U.S.C. § 1988. Therefore, Lt. Allen, the City, and the County are entitled to summary judgment with respect to this claim as well.

## III. Conclusion

As determined in the previous Order (Dkt. No. 189), for the reasons stated above, the Court denies plaintiffs' second motion for partial summary judgment (Dkt. No. 100); grants the City's motion for summary judgment (Dkt. No. 134); and grants the County's motion for summary judgment (Dkt. No. 138). The Court will enter judgment by separate Order.

It is so ordered this the 27th day of April, 2017.

Kristine G. Baker
United States District Judge